HAGEL, Judge,
concurring in the result, dissenting in part:
I concur in the majority’s ultimate conclusion that we do not have jurisdiction to review the September 1998 Board decision. However, I write separately because I believe that our lack of jurisdiction stems from entitlement to service connection for a chronic lung disorder being a separate and distinct claim for VA compensation from entitlement to service connection for Persian Gulf Syndrome under 38 U.S.C. § 1117. The majority chooses not to decide this issue and in doing so further confuses this Court’s caselaw with the interchangeable use of the terms “issue,” “matter,” and “claim” without a clear definition of those terms.
Although the majority states that it is unnecessary to decide whether Mr. Tyrues has presented one claim or two, its analysis stems from the proposition that Mr. Tyrues has presented a single claim for benefits based on a lung condition. The majority regards Mr. Tyrues’s joint pain, *188 stomach pain, and memory loss symptoms as only ancillary to the lung condition. Such analysis is facilitated by the mostly interchangeable use of the terms “issue,” “matter,” and “claim” without specifically stating to what each terms refers. This lack of precision will, in my view, result in fuzzy decisions in the future, especially when used in an opinion by the full Court.
The majority’s decision includes language such as, “a Board decision denying VA disability compensation on one issue, while another issue is still under adjudication.” and “the Board denies benefits based on a particular issue with distinct criteria and remands for further adjudication another issue of establishing entitlement to benefits” without explaining what an “issue” is — namely whether it is a claim for benefits or theory of entitlement to benefits. Ante at 13 (emphasis added). The majority later refers to a potential situation where “the Board decides one matter and remands another matter,” again without explaining the meaning of “matter.” Id. at 14 (emphasis added). By using the terms interchangeably, the majority is able to avoid using the more appropriate terms “claim” and “theory,” and, thus, is able to avoid deciding the central issue raised by Mr. Tyrues on appeal and briefed by the parties — that is, whether the facts in this case define one claim or two and, if two, the effect of this Court’s decision in Roebuck
“Claim” has been defined by VA in 38 C.F.R. § 3.1(p) (2009), as “a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit.” Further, in Roebuck v. Nicholson, the Court adopted the definition of “claim” applied by the Federal Circuit in Schroeder v. West, and determined that a claim is an application for entitlement to a VA benefit based on a current disability. Roebuck v. Nicholson, 20 Vet.App. 307, 312-13(2006); see Schroeder v. West, 212 F.3d 1265, 1269 (Fed.Cir.2000). The Roebuck Court also recognized, in line with the Court’s holding in Bingham v. Princi-pi, that although there may be multiple theories or means of establishing entitlement to a benefit for a disability, if the theories all pertain to the same benefit for the same disability, they constitute the same claim. Id. at 313; see Bingham v. Principi, 18 Vet.App. 470, 474 (2004) aff'd sub nom. Bingham v. Nicholson, 421 F.3d 1346 (Fed.Cir.2005). The Court should therefore apply this definition of “claim” to the facts in the instant appeal. Applying that definition to the facts in this case, Mr. Tyrues has two separate claims for VA benefits. To fully explain my reasoning, it is necessary to provide a more extensive recitation of the relevant facts than is provided by the majority.
In March 1995, shortly after being hospitalized for pneumonia, Mr. Tyrues amended a prior claim for VA benefits to include entitlement to benefits for a lung disability. In support of his claim he submitted medical records that refer to both pneumonia and bronchitis. His claim for benefits for a lung disorder was initially denied. Mr. Tyrues appealed that denial to the Board.
In December 1996, Mr. Tyrues appeared at a hearing before a Board member. At this hearing, he discussed his lung condition, including coughing and congestion, which he stated was incurred in service based on his exposure to dust, fumes, and kerosene. Mr. Tyrues stated that, since returning from the Persian Gulf, he has been diagnosed with pneumonia three or more times as well as a lung infection or a growth on his lung. After the Board member stated that he had no further questions, Mr. Tyrues’s representative asked Mr. Tyrues whether he had any *189 thing to add before concluding the hearing. In response, Mr. Tyrues stated that he had been reading about symptoms that were being experienced by other soldiers who had served in the Persian Gulf and that he had noticed that he too was developing these symptoms, including soreness and aching in his joints. In response to Mr. Tyrues’s description, the Board member stated:
That’s not really relevant now. I would advise you, there is what we call a Persian Gulf syndrome, things, now I, I would, if I were you get ahold of Mr. Weatherly here and you guys could work up a claim because that’s an area right now which the law is changing rather rapidly and there is a distinct possibility you can get service connected for some of these things because, like I said, it, it is in the process right now of developing and I would certainly file a claim for it.
R. at 147 (emphasis added.) The Board member further stated that Mr. Tyrues did not currently have such a claim, but that he should file a claim based on the symptoms that he was describing. The Board member again stated: “[T]he whole process starts with you filing a claim and identifying what you feel are the symptoms related to this and [what] the Persian Gulf syndrome symptoms are, there’s a wide variety of them.... ” Id. Six days later, in apparent response to the suggestion from the Board member, Mr. Tyrues submitted a statement in support of claim, stating that he wanted to amend his claim “to include aching joints, memory loss, and stomach condition caused from [his] Persian Gulf service.” R. at 159.
In March 1997, the Board remanded his claim for benefits for a lung disorder back to the regional office, which sent Mr. Ty-rues a letter, on March 19, 1997, notifying him that he could submit additional evidence with respect to that’ claim. In April 1997, YA sent Mr. Tyrues a notice letter regarding his newly filed “claim for disability benefits based on Persian Gulf War service.” R. at 163 (emphasis added). The letter requested that Mr. Tyrues submit medical and non-medical evidence to support his claim. In response, Mr. Ty-rues submitted lay statements from his wife, a coworker, and a fellow soldier who served with him in the Persian Gulf and who, at that time, worked with him at home. The letter from his coworker referred to Mr. Tyrues experiencing flu and cold symptoms upon returning from service. Mr. Tyrues’s fellow soldier and current coworker also stated that after returning from duty, Mr. Tyrues missed work “because of flu, colds, complaints of aching joints, and soreness in his body.” R. at 172. He further stated that Mr. Tyrues could not work as a result of the pain in his body. Mr. Tyrues’s wife stated that her husband experienced constant joint pain, numbness, inability to move after sleeping, flu-like symptoms, and a propensity to experience colds.
An April 4, 1997, VA Compensation and Pension Examination worksheet mentions two claims, one claim for benefits for a lung disorder being remanded from the Board and another claim for benefits for aching joints, memory loss, and a stomach condition, but notes that both claims are related to service in the Persian Gulf. In May 1997, Mr. Tyrues underwent a VA examination, which appears to relate his lung condition to his service in the Persian Gulf. The examiner also diagnosed him with “possible Gulf War Syndrome with shortness of breath, joint pain, [and] memory loss.” R. at 191. Following a request by VA for authorization to obtain records, VA received records from Dr. Arnold, which stated that Mr. Tyrues experienced significant lower back pain, manifested as “a dull aching pain with intermittent sharp *190 component on movement.” R. at 212. Later records show Mr. Tyrues sought treatment for joint pain in his right shoulder, lumbar strain, flu-like symptoms, morning stiffness in his joints, generalized joint pain, coughing, and a sore throat. VA also received medical records from Dr. Mitch-um, which also revealed that Mr. Tyrues experienced chronic back pain, pneumonia, and bronchitis.
On April 20, 1998, the regional office issued a Supplemental Statement of the Case, stating that it was continuing to deny entitlement to VA benefits for a lung disorder. On the same day, the regional office issued a decision that addressed four issues: A denial of entitlement to service connection for a lung condition (noted as a remanded issue) and denial of the three other conditions, including joint pain, memory loss, and a stomach condition (noted to be new issues and all attributed to an “undiagnosed illness”). R. at 241. Mr. Tyrues, referencing the April 1998 Supplemental Statement of the Case, which denied only entitlement to VA benefits for a lung condition, appealed to the Board. Indeed, the brief submitted by his representative to the Board on appeal clearly stated that the “question at issue” on appeal was “entitlement to service connection for a lung disorder.” R. at 261. In this brief, Mr. Tyrues’s representative referred only to Mr. Tyrues’s claim for benefits for a lung disorder and that claim’s previous procedural history.
In September 1998, the Board denied service connection for a lung disorder. The Board, referring to the April 1998 rating decision, also remanded the “issue of entitlement to service connection [ ] for a chronic disorder manifested by shortness of breath, due to an undiagnosed illness, claimed as secondary to Persian Gulf War service.” R. at 266. Although the Board discussed some of the same evidence, it referred to two claims, a claim for entitlement to service connection for a lung disorder on a direct basis and a claim for entitlement to service connection for a chronic disorder, due to an undiagnosed illness. With regard to the chronic disorder, the Board ordered VA to provide Mr. Tyrues with a new medical examination, which was provided in December 1998.
In February 2000, the Board denied Mr. Tyrues’s claim for benefits for “shortness of breath as a chronic disability resulting from an undiagnosed illness.” R. at 313. The decision was subsequently remanded by the Court pursuant to the parties’ joint motion for a remand for VA to provide Mr. Tyrues with a new medical examination. In December 2001, Mr. Tyrues underwent another VA examination, at which the examiner stated that Mr. Tyrues’s “shortness of breath due to an undiagnosed illness is at least as likely as not due to the Gulf War service.” R. at 350. That examiner also diagnosed Mr. Tyrues with “mild chronic bronchitis.” Id. In July 2002, the Board’s Case Development Unit found that these two diagnoses appeared to be inconsistent and ordered another examination, requesting the examiner diagnose Mr. Ty-rues with a particular disorder or indicate that his symptoms were the result of an undiagnosed illness. In October 2002, a VA examiner found that Mr. Tyrues did not have any respiratory problems at that time and that any previous problems are related to allergies and not related to his Gulf War service. In April 2004, the Board denied his claim for benefits for a respiratory/ lung disorder as a chronic disability resulting from an undiagnosed illness.
These facts reveal that Mr. Tyrues was advised by a member of the Board, to file a claim for benefits for Persian Gulf Syndrome. Although the majority’s description of this person as a “hearing officer” is *191 not incorrect, such a description does not convey the authority with which this statement was made. See 38 C.F.R. § 3.103(c)(2)(2009). Certainly a Board member understands the difference between additional symptoms of a disability for which benefits have already been claimed and a claim for benefits based upon a separate disability. The Board member specifically advised Mr. Tyrues to submit a “claim” to the agency of original jurisdiction. R. at 147. The use of such terminology by the Board serves to illustrate the problems associated with the majority’s undefined use of “issue,” “claim,” and “matter.” Further, from the time that Mr. Tyrues amended his claim in 1996 to include entitlement to VA benefits for aching joints, memory loss, and stomach condition caused by his Persian Gulf service until the Board issued its September 1998 decision remanding that claim, VA had considered, developed, and adjudicated his claims for benefits for a lung condition and for a chronic disability resulting from service in the Persian Gulf separately. Although the majority states that it need not decide the issue of whether Mr. Tyrues presented one claim or two, it must consider the claims as one in order to proceed to its discussion of Harris and Roebuck, the two issues the majority appears bound to reach. In so doing, the majority treats Mr. Tyrues as having filed a single claim for a lung disorder based on two theories of entitlement to service connection, a direct basis under 38 U.S.C. § 1110 and a presumptive basis under 38 U.S.C. § 1117. However, in doing so, the majority fails to explain why Mr. Tyrues’s claim for VA benefits for a chronic disorder, characterized by a collection of symptoms described as aching joints, memory loss, a stomach condition, and shortness of breath caused by an undiagnosed illness is part of a claim for benefits for a single lung disorder.
As stated above, when Mr. Tyrues initially described his symptoms at the December 1996 Board hearing, the Board member informed him that he needed to file a new claim for benefits for Persian Gulf syndrome, which he subsequently did. Upon receipt of his new claim, the regional office developed this claim as separate and distinct from his claim for benefits for a lung condition. The record contains a notice letter requesting that he submit evidence to support his newly filed “claim for disability benefits based on Persian Gulf War service.” R. at 163. Indeed, he submitted lay statements from his wife, his coworker, and a fellow soldier and coworker, which indicated that he experienced joint and overall body pain as a result of an undiagnosed illness. Medical reports from Drs. Arnold and Mitchum confirm these symptoms. Although the September 1998 Board decision referred only to shortness of breath, it still noted that Mr. Ty-rues’s claim was for service connection for a chronic disorder due to an undiagnosed illness.
“A claim is an application for entitlement to a VA benefit based on a current disability.” Roebuck, 20 Vet.App. at 312-13; see Schroeder, 212 F.3d at 1269. In Roebuck, the Court held that “although there may be multiple theories or means of establishing entitlement to a benefit for a disability, if the theories all pertain to the same benefit for the same disability, they constitute the same claim.” 20 Vet.App. at 313. In this case, Mr. Tyrues has sought benefits for two separate disabilities: A diagnosed lung disorder, described as both pneumonia and bronchitis, and an undiagnosed chronic condition manifested by joint pain, body ache, memory loss, and stomach conditions alleged to be the result of his service in the Persian Gulf. Compare Boggs v. Peake, 520 F.3d 1330, 1336 (rejecting this Court’s holding that two claims based on separate and distinct diagnosed *192 injuries can be considered the same claim if they involve the same symptomatology),[8] with Kelly v. Nicholson, 463 F.3d 1349, 1353 (Fed.Cir.2006) (holding that multiple diagnoses for a single disability “were not separate claims, [but were] merely two means of establishing the same end — the service connection claim”). Here, Mr. Ty-rues could establish entitlement to service connection based on either of his disabilities.
The law clearly commands the determination that Mr. Tyrues has two separate claims. Section 1117 of title 38 of the U.S.Code provides entitlement to compensation on a presumptive basis to a Persian Gulf War veteran who complains of having an undiagnosed illness or illnesses that are 10% or more disabling during the presumption period established by the Secretary. 38 U.S.C. § 1117(a)(1)(A) and (B). Pursuant to section 1117(d)(2), the Secretary has promulgated 38 C.F.R. § 3.317, which provides, in pertinent part:
(a)(1) Except as provided in paragraph (c) of this section, VA will pay compensation in accordance with chapter 11 of title 38, United States Code, to a Persian Gulf veteran who exhibits objective indications of a qualifying chronic disability, provided that such disability:
(I)Became manifest either during active military, naval or ah’ service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10[%] or more not later than December 31, 2006; and
(ii) By history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis.
(b) For the purposes of paragraph (a)(1) of this section, signs or symptoms which may be manifestations of undiagnosed illness or medically unexplained chronic multi symptom illness include, but are not limited to:
(1) Fatigue
(2) Signs or symptoms involving skin
(3) Headache
(4) Muscle pain
(5) Joint pain
(6) Neurologic signs or symptoms
(7) Neuropsychological signs or symptoms
(8) Signs or symptoms involving the respiratory system(upper or lower)
(9) Sleep disturbances
(10) Gastrointestinal signs or symptoms
(11) Cardiovascular signs or symptoms
(12) Abnormal weight loss
(13) Menstrual disorders.
38 C.F.R. § 3.317 (2008) (emphases added); see also 38 U.S.C. § 1117(g).
As noted by the Secretary in his brief, 38 U.S.C. § 1117 provides a unique presumption of service connection for undiagnosed illnesses incurred in, or manifested during a presumptive period following, service in the Persian Gulf. By their very nature, these claims involve undiagnosed illnesses. In this case, however, Mr. Ty-rues’s lung condition has been diagnosed as both pneumonia and bronchitis. He filed his original claim for a lung condition shortly after he was hospitalized for pneumonia. At the December 1998 Board hearing, Mr. Tyrues discussed his lung condition in terms of previous diagnoses of pneumonia and a lung infection. The med *193 ical records submitted with his claim reflect these diagnoses. On the contrary, at the December 1998 Board hearing, Mr. Tyrues described symptoms including aching joints, memory loss, and stomach problems. The May 1997 medical examination specifically noted these symptoms and diagnosed him with possible Persian Gulf Syndrome with shortness of breath, joint pain, and memory loss, which could be compensable under section 1117.
Mr. Tyrues’s private and VA medical records reveal that, at various times, he has sought treatment for several of the symptoms noted in § 3.817, including muscle pain, joint pain, symptoms involving the respiratory system, and gastrointestinal symptoms. These symptoms formed a basis for entitlement to service connection under 38 U.S.C. § 1117 that is distinct from Mr. Tyrues’s claim for entitlement to benefits for a lung condition under 38 U.S.C. § 1110. In support of his argument that he has submitted two theories of entitlement to service connection instead of two separate claims, Mr. Tyrues cites Schroeder, 212 F.3d at 1270. However, in Schroeder, the veteran had a single diagnosed disability, an eye condition, and sought service connection for that condition on a direct basis and as a result of exposure to Agent Orange. Unlike Schroeder, which involved separate theories for establishing a single claim, this case involves two separate factual bases for establishing entitlement to service connection for two different disabilities. In this case, any claim for service connection for a diagnosed lung disorder, whether bronchitis or pneumonia, falls outside entitlement to service connection under section 1117. Indeed, under the statute and implementing regulation, such disability “by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis.” 38 C.F.R. § 3.317(a)(1)(ii).
The facts in this case reveal that Mr. Tyrues filed two claims for VA benefits based on separate disabilities. If there are two claims and not one, then this case is easily resolved. The claim for VA benefits for a lung condition was resolved by the Board in its 1998 decision, from which Mr. Tyrues sought no appeal. This claim has, therefore, been finally resolved. Consequently, I agree with the majority that the Court does not have jurisdiction to review that claim now. 38 U.S.C. § 7266(a). However, I cannot agree with the majority’s implied determination that in this case Mr. Tyrues’s conditions constitute a single claim for VA benefits.[9] With respect to that matter, I respectfully dissent.

. See Clemons v. Shinseki, 23 Vet.App. 1 (2009) for this Court’s application of Boggs v. Peake, 520 F.3d at 1336.

. Because I would find that Mr. Tyrues has two separate claims, I believe that the discussion in the majority's opinion regarding whether theories of service connection may be treated separately, including its consideration of Harris, Roebuck, and Joyce, all ante, is unnecessary and, even if it was properly included in the opinion, would be obiter dictum. However, I note that the Federal Circuit's order remanding this case would have the Court consider Roebuck and Joyce.